IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:16-CV-21156-COOKE-TORRES

JASON PIERRE-PAUL, an individual,

      Plaintiff,

v.

ESPN, INC., a foreign
corporation; and ADAM SCHEFTER,
an individual;

      Defendants.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

MEISTER SEELIG & FEIN LLP
Mitchell Schuster, Esq.
ms@msf-law.com
Kevin Fritz, Esq.
kaf@msf-law.com
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3570
Facsimile: (212) 655-3535
*Attorneys for Plaintiff*

HINSHAW & CULBERTSON LLP
John C. Lukacs, Sr., Esquire
jlukacs@hinshawlaw.com
FNB: 362727
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, Florida 33134
Telephone: (305) 358-7747
Facsimile: (305) 577-1063
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT ............................................................................................................... 4

    I.   THE COMPLAINT STATES A CLAIM FOR INVASION OF PRIVACY ..................... 4

        A.    Elements of the Claim ............................................................................. 4

        B.    Implications of the First Amendment Require a Fact-Intensive Inquiry ................ 5

        C.    Schefter Unlawfully Obtained the Chart ................................................. 5

        D.    ESPN Does Not Explain How the Chart Was Newsworthy ................................... 9

        E.    Schefter Admitted that the Chart Was Not Newsworthy ...................................... 12

    II.  THE COMPLAINT STATES A CLAIM FOR VIOLATION OF FLA.
        STAT. § 456.057 ......................................................................................... 14

        A.  The Statute is Not Limited to Health Care Providers .................................... 15

        B.  There is No Basis to Bar Plaintiff's Private Right of Action ...................... 17

        C.  The Statute Does Not Violate the First Amendment .................................. 17

    III. FLA. STAT. § 768.295 IS INAPPLICABLE ................................................. 18

CONCLUSION ............................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Acosta v. Richter*,
671 So.2d 149 (Fla. 1996)..................................................................................17

*Anderson v. Sulters*,
499 F.3d 1228 (10th Cir. 2007) ...........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)................................................4

*Bartnicki v. Vopper*,
532 U.S. 514, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001)................................................6

*Bell v. Associated Press*,
584 F.Supp. 128 (D.D.C. 1984)...........................................................................11

*Boehner v. McDermott*,
332 F.Supp.2d 149 (D.D.C. 2004).........................................................................5

*Bollea v. Clem et al.*
(Pinellas County Case No. 12012447 CI-011) ............................................................18

*Cape Publ., Inc. v. Hitchner*,
549 So.2d 1374 (Fla. 1989)........................................................................4, 7, 10

*Chapman v. Journal Concepts, Inc.*,
528 F.Supp.2d 1081 (D. Haw. 2007) .....................................................................11

*Cinel v. Connick*,
15 F.3d 1338 (5th Cir. 1994) ............................................................................13

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)..................................................7

*Daw v. Cowan*,
2013 WL 5838683 (N.D. Fla. Oct. 30, 2013) ............................................................15

*Doe v. Univision Tele. Group, Inc.*,
717 So.2d 63 (Fla. 3rd DCA 1998)......................................................................10

*Dryer v. National Football League*,
2016 WL 761178 (8th Cir. Feb. 26, 2016) ...............................................................11

*Florida Star v. B.J.F.*,
491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) .......................................................7

*Hargrave v. GE Aviation Sys., LLC*,
2009 WL 2340654 (M.D. Fla. July 29, 2009) ...............................................................16

*Harris v. Miami Daily News, Inc.*,
127 So.2d 715 (Fla. 3rd DCA 1961) ...........................................................................10

*Holt v. Cox Enterp.*,
590 F.Supp. 408 (N.D. Ga. 1984) ...............................................................................11

*Logan v. District of Columbia*,
447 F.Supp. 1328 (D.D.C. 1978) ................................................................................13

*Marshall v. ESPN*,
111 F.Supp.3d 815 (M.D. Tenn. 2015) .......................................................................11

*Moore v. Univ. of Notre Dame*, 968 F.Supp.
1330, 1336 n. 11 (N.D. Ind. 1997) .............................................................................11

*Pielage v. McConnell*,
516 F.3d 1282 (11th Cir.2008) .....................................................................................4

*Shulman v. Group W Prods.*,
18 Cal. 4th 200 (1998) ................................................................................................10

*St. Petersburg Bank & Trust Co. v. Hamm*,
414 So.2d 1071 (Fla. 1982)..........................................................................................15

*Thomas v. Catlin*,
141 Fed. Appx. 673 (9th Cir. 2005)..............................................................................11

*Toffoloni v. LFP Publ'g Group, LLC*,
572 F.3d 1201 (11th Cir. 2009) .....................................................................................5

## STATUTES

Fed.R.Civ.P. 8(a)(2) .....................................................................................................4
Fed.R.Civ.P. 12(b)(6)...................................................................................................4
Fla. Stat. § 456.057 ...................................................................................6, 7, 10, 14, 15, 16
Fla. Stat. § 794.03 .........................................................................................................8
Fla. Stat. § 768.295 .....................................................................................................17

## OTHER AUTHORITIES

*Restatement (Second) of Torts* § 652D ....................................................................2, 4

Plaintiff Jason Pierre-Paul ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion to dismiss.[1]

## **PRELIMINARY STATEMENT**

ESPN only exists because of athletes, such as Plaintiff, and the public's desire to watch them perform.  Without athletes, ESPN has no content.  One would expect ESPN to protect athletes while, at the same time, responsibly reporting on their activities, both on and off the field.  Yet, with respect to Plaintiff, ESPN has done the exact opposite.

In a Twitter message available to the billions of people worldwide with Internet access, ESPN reporter Adam Schefter ("Schefter") disclosed that Plaintiff's finger had been amputated after a fireworks accident.  However, being the first to "break" that news was not satisfying enough for Schefter.  In that same Twitter message, Schefter chose to include a picture of Plaintiff's medical records because, by his own admission, he wanted to show the world that he had "supporting proof" of the surgical procedure.

The motion tries to merge two completely different things: (1) reporting that a professional athlete was treated for an injury, which could be newsworthy; and (2) publishing that athlete's (unlawfully obtained) private medical records, which is not.  If the hospitalization of a public figure constituted authorization for the publication of that person's medical records, then the right to privacy would be non-existent.  Indeed, public figures would hesitate to seek medical treatment, or be less likely to share certain information with health care professionals, out of fear that hospital personnel would sell their medical records to those who want to profit from the publication thereof (as ESPN did here), thereby negatively impacting their health.  That is not the purpose of the First Amendment.

The Restatement (Second) of Torts provides:

> In determining what is a matter of legitimate public interest, account must be taken of the customs and conventions of the community; and in the last analysis *what is proper becomes a matter of the community mores*. … The limitations, in other words, are those of common decency, having due regard to the freedom of the press and its reasonable leeway to choose what it will tell the public, but also due regard to the feelings of the individual and the harm that will be done to him by the exposure.

---

[1] Although the motion was filed by defendant ESPN, Inc. ("ESPN"), defense counsel has represented to Plaintiff's counsel that co-defendant Adam Schefter will join in the motion.

*Restatement (Second) of Torts* § 652D, comment h. (1977)(emphasis added).  Here, the comments to Schefter's Twitter message reveal the community's outrage at his deliberate disregard for Plaintiff's privacy:

- "SO INCREDIBLY UNETHICAL"

- "HIPAA 101. someone violated it.  and for a journalist to be complicit SMH" [shaking my head]

- "You're a real piece of sh*t for putting that picture up."

- "dude …do HIPPA [sic] laws mean anything?"

- "And you could have not shown this and not put people in jeopardy (and still had the story)"

- "so how do you feel about helping some shlub hospital employee destroy his life?"

- "You could have published the story without publishing the record"

- "very disappointed in your judgment.  ESPN should not permit this behavior. Patients deserve privacy."

- "This is illegal.  Nice going"

- "Who does this. Shameful"

- "How much did you pay for this?"

- "You just violated JPP's rights as an American.  Congrats?  It would have come out eventually, but there's no low to [sic] low 4u."

- "You're wrong for posting that man medical records bruh.  Straight trash move."

- "No regard for HIPAA.  Disgraceful.  Forward to attorney general, disgusted to see posted. No integrity."

(Exhibit 1).

Amazingly, after the firestorm of public backlash for his intentional invasion of Plaintiff's privacy, Schefter still had not learned his lesson about journalistic integrity.  Just last month, Schefter interviewed NFL player Greg Hardy about his alleged domestic abuse, and the interview was later aired on ESPN.  Both Schefter and ESPN were widely criticized, including by one of ESPN's female on-air hosts, for giving Hardy a platform to deny his role as an abuser (he claimed that the photos of deep bruising on the accuser's shoulders and neck were manipulated), without any challenging questions from Schefter.  Schefter then infuriated people

even more when he stated that he found Hardy "to be a changed kind of guy…." (Exhibit 2). Thus, if Schefter was one of "the nation's most respected sports journalists," as ESPN claims (ESPN's Br. at 1), he is not anymore.

As for ESPN, it touts itself as "The Worldwide Leader in Sports."  After Schefter's significant lapse in judgment, ESPN had (and still has) the opportunity to acknowledge the mistake and use its position in the media industry to advocate for the privacy of athletes' medical records.  Instead, ESPN filed a motion asking the Court to dismiss Plaintiff's claims and to sanction Plaintiff for having the audacity to stand up to ESPN.

## STATEMENT OF FACTS

Plaintiff is a professional football player for the New York Giants of the National Football League (the "NFL"). (Compl. ¶ 2).  On July 4, 2015, Plaintiff sustained a serious hand injury in a fireworks accident. (Id. 12). Thereafter, Plaintiff was admitted to Jackson Memorial Hospital in Miami, FL (the "Hospital") for treatment of his injuries. (Id. ¶ 13).  The Hospital created, maintained and stored Plaintiff's medical records, which contained his treatment and diagnosis, and which are private and confidential. (Id. ¶ 15).

The Hospital disclosed Plaintiff's medical records, including a photograph/image of a chart reflecting the amputation of Plaintiff's right index finger (the "Chart"), to Schefter, without Plaintiff's written authorization, in violation of a state statute prohibiting the disclosure of such information. (Id. ¶¶ 16, 27).  On July 8, 2015, Schefter then distributed the unlawfully obtained Chart to his 3.86 million Twitter followers, which Tweet is now available to anyone with access to the Internet (the "Twitter Message"). (Id. ¶ 17).  In the Twitter Message, and above the Chart, Schefter wrote: "ESPN obtained medical charts that show Giants DE Jason Pierre-Paul had right index finger amputated today." (Id. 18).

In a subsequent interview with *Sports Illustrated*, Schefter admitted that he knew that Plaintiff had not authorized the disclosure of the Chart. (ESPN's Br., Exh. 2).  For instance, Schefter admitted that "there was a cone of secrecy that surrounded [Plaintiff] for five days that not even his own team could crack." (Id.).  Schefter further claimed that the Chart "came to" him from an unidentified source and that, with hindsight, he "could have and should have done even

more here due to the sensitivity of the situation." (Id.).  Thus, Schefter knew that the Hospital's disclosure of the Chart was illegal.

## ARGUMENT

A complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.,* 556 U.S. at 678.  When considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

## I.      THE COMPLAINT STATES A CLAIM FOR INVASION OF PRIVACY

### A.    Elements of the Claim

The Restatement (Second) of Torts defines the tort of invasion of privacy by public disclosure of private facts as: "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public. *Restatement (Second) of Torts* § 652D.  Thus, the elements of the claim are: (1) the publication (2) of private facts (3) that are offensive and (4) are not of public concern. *Cape Publ., Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla. 1989).

Here, ESPN does not dispute that Plaintiff has properly alleged the first three elements of the claim.  ESPN only argues that that Plaintiff's private and confidential medical chart is of legitimate concern to the public, and thus the publication thereof is protected by the First Amendment to the U.S. Constitution. (ESPN's Br. at 16 – 19).  However, the Complaint adequately alleges, and the Court must at this procedural juncture assume, that "[t]he Chart, as distinguished from the amputation of Plaintiff's right index finger, was not a matter of legitimate public concern." (Compl. ¶ 36).  Therefore, Plaintiff has sufficiently alleged a *prima facie* case.

**B.**     **Implications of the First Amendment Require a Fact-Intensive Inquiry**

According to the Eleventh Circuit, "[b]oth the rights to freedom of speech and freedom of the press … and the right to privacy … are fundamental constitutional rights.  The Constitution directs no hierarchy between them.   Thus, courts are required to engage in a fact-sensitive balancing, with an eye toward that which is reasonable and that which resonates with our community morals, in order to protect the Constitution as a whole." *Toffoloni v. LFP Publ'g Group, LLC*, 572 F.3d 1201, 1207 – 08 (11th Cir. 2009).  Hence, ESPN's First Amendment rights do not override Plaintiff's right to privacy, as ESPN claims. (ESPN's Br. at 2).

Furthermore, because the Court is required to engage in a fact-sensitive inquiry, dismissal prior to any discovery being conducted is inappropriate.   Indeed, even the *Sports Illustrated* writer to whom Schefter made his post-tweet, damaging admissions acknowledged: "There's also a fair argument to make that had Schefter kicked around the implications of tweeting out the medical report with more ESPN editors, they might have made a consensus decision to merely run the information without the image." (ESPN's Br., Exh. 2).  Furthermore, Plaintiff is entitled to discover, for example, the precise circumstances under which the Chart was given to Schefter, the compensation, if any, that Schefter and/or ESPN provided to the Hospital's personnel in exchange for its improper disclosure of the Chart, and, from a damages perspective, the revenues enjoyed at the expense of Plaintiff's privacy rights.

**C.**     **Schefter Unlawfully Obtained the Chart**

Where, as here, a defendant accepts information from a source with knowledge of the illegality of the source's disclosure, the defendant has unlawfully obtained the information and is not shielded against liability for subsequent disclosure.   In *Boehner v. McDermott*, 332 F.Supp.2d 149 (D.D.C. 2004), a telephone call among Republican congressional representative John Boehner and other prominent Republican representatives was intercepted by a radio scanner and recorded by a couple in Florida, the Martins. *Id.* at 151.   Upon the advice of their local representative, the Martins delivered the tape to James McDermott, a ranking Democrat member of the Ethics Committee, along with a cover letter explaining that the call was overheard on a scanner. *Id.* McDermott listened to the tape and disclosed it to *The New York Times*, which published a front-page story about the tape. *Id.*   Boehner then sued McDermott for knowingly disclosing an unlawfully intercepted communication in violation of federal and state wiretapping statutes. *Id.* at 152.

The U.S. District Court for the District of Columbia initially granted the motion to dismiss on First Amendment grounds, but the Court of Appeals reversed, holding that "the illegal activity of the Martins, of which McDermott was well aware when he took possession of the tape, takes McDermott's actions" outside of the *Florida Star* line of cases.[2] *Id.* at 152, 164. The Court of Appeals stated: "By accepting the tape from the Martins, McDermott participated in their illegal conduct." *Id.* at 164. The U.S. Supreme Court granted certiorari, vacated the judgment of the Court of Appeals, and remanded the case in light of its recent decision in *Bartnicki v. Vopper*, 532 U.S. 514, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001). In *Bartnicki*, which pertained to school board-teachers' union labor negotiations (a matter of public conern), the Supreme Court noted that whether the First Amendment shields a defendant from liability under the wiretapping statute substantially depends on the lawfulness of the manner in which he initially obtained the information. 523 U.S. at 532 n.19. The Court of Appeals in *Boehner* then reversed the District Court's dismissal and remanded. 332 F.Supp.2d at 152.

The District Court stated that McDermott did not lawfully obtain the material if he knew of the Martins' illegal disclosure at the time he voluntarily accepted it. *Id.* at 164. Because the evidence established that McDermott knew he was receiving a tape that had been illegally obtained, he was not entitled to First Amendment protection. *Id.* at 169.

Here, the Complaint alleges that, in violation of both the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and Florida Statute § 456.057, the Hospital disclosed the Chart to Schefter. (Compl. ¶ 16). At the time that Schefter obtained the Chart from the Hospital, he knew that the Hospital's disclosure was illegal, as evidenced by his post-tweet admission that he knew Plaintiff wanted to keep his medical condition secret and by his refusal to identify his source. (Compl., ¶ 1; ESPN's Br., Exh. 2). Thus, it was unlawfully obtained by him.

ESPN denies that Schefter obtained the Chart from the Hospital and refers to the allegation as "troubling." (ESPN's Br. at 3 n.1). However, as ESPN acknowledges, the Court must assume that the allegation is true. (Id.). At a minimum, ESPN's denial that Schefter obtained the Chart from the Hospital creates an issue of fact that warrants the denial of the motion to dismiss. Putting that aside, even if ESPN later establishes that Schefter obtained the Chart from someone other than the Hospital, the Chart was still unlawfully obtained because

---

[2] The *Florida Star* case is discussed below.

Plaintiff did not authorize *anyone* to disclose it and Schefter knew it was stolen when he received it. He nonetheless chose to publish it.

The two primary cases upon which ESPN relies are *Cape Publ., Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla. 1989) and *Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989). Those cases are easily distinguishable because the information at issue therein *was lawfully obtained* by the press, whereas here, Schefter unlawfully obtained the Chart from the Hospital, which disclosure indisputably violated both HIPAA and Florida Statute § 456.057.

In *Hitchner*, the issue was "whether a newspaper can be held liable under a private-facts tort theory for publishing *lawfully obtained*, confidential child abuse information in a story on a related [public] child abuse trial." 549 So.2d at 1375 (emphasis added). Respondents Hitchners were charged with aggravated child abuse by maliciously punishing a child, but the trial judge directed a verdict in their favor after the close of the prosecution's case. *Id.*

A reporter employed by petitioner Cape Publications ("Cape") obtained from the prosecutor's office, and *with the prosecutor's consent*, the entire case file, which included a Florida Department of Health and Rehabilitative Services pre-dispositional report, a sheriff's case report, and a typed interview with the child by the prosecutor, *none of which were labeled confidential. Id.* Cape then published an article detailing the child abuse information and questioning the trial court's determination. *Id.* at 1375 – 76. The Hitchers sued the reporter and Cape for, *inter alia*, invasion of privacy by public disclosure of private facts, claiming that certain alleged abuse was not discussed at trial and were obtained from confidential reports. *Id.* at 1376. The Florida Supreme Court summarized Cape's actions as follows:

> Following a child abuse trial, Cape *lawfully obtained* from government records additional and confidential child abuse information related to the case. It printed the information in an article on that particular trial. *Its purpose in so doing was to scrutinize the judicial function*. It was printing what it believed to be facts brought out at trial in an effort to hold up to the public what it considered to be a questionable judicial determination. *It was not attempting to sensationalize a private nongovernment matter*.

*Id.* at 1378 (emphasis added).

Quoting the U.S. Supreme Court in *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Florida Supreme Court then noted that individuals rely on the news media "to report fully and accurately the proceedings of government" and that, with respect

to judicial proceedings in particular, "the function of the press serves … to bring to bear the beneficial effects of public scrutiny upon the administration of justice." 549 So.2d at 1378. The Florida Supreme Court further stressed that crimes, prosecutions thereof, and judicial proceedings arising therefrom, "are without question events of legitimate concern to the public…." *Id.* (quoting *Cox*).

Not only do the aforementioned facts and statements from the Florida Supreme Court demonstrate how distinguishable *Hitchner* is from this case, the Court also made clear that its ruling was based upon the fact that the published information was *lawfully obtained* from government officials and thus *within the public domain*: "We underscore the fact that the information published by Cape was lawfully obtained; it was freely given by government officials and thus was legitimately within the public domain." *Id.* at 1379. Those facts, information lawfully obtained from the government, are not present here.

The facts of *Florida Star* are equally distinguishable from this case. In that case, after B.J.F. reported to the Sheriff's Department that she had been robbed and sexually assaulted, the Department prepared a report that identified her by full name. 491 U.S. at 527. *The report was placed in the Department's press room*, *and the Department did not restrict access to the press room or to the report*. *Id.* A reporter from the newspaper copied the report from the press room, and published an article about the crime that included B.J.F.'s full name in violation of Florida Statute § 794.03. *Id.* B.J.F. filed suit against, *inter alia*, the newspapers alleging negligent violation of the statute. *Id.* at 528. After the trial court denied the newspapers' motions for a directed verdict, the Florida First District Court of Appeal affirmed, finding that a rape victim's name is "of a private nature and not to be published as a matter of law." *Id.* at 529. The Florida Supreme Court denied discretionary review, and the newspaper appealed to the U.S. Supreme Court. *Id.*

The U.S. Supreme Court noted that criminal matters generally constitute matters of legitimate public concern. *Id.* at 536 – 37. Additionally, the Supreme Court explained that because the victim's full name was publicly available in the Department's report, the imposition of damages for violating the statute ran afoul of the First Amendment: "The government's issuance of such a release, without qualification, can only convey to recipients that the government considered dissemination lawful, and indeed expected the recipients to disseminate the information further. Had appellant merely reproduced the news release prepared and

released by the Department, imposing civil damages would surely violate the First Amendment." *Id.* at 538 – 39. In conclusion, the Supreme Court expressly stated that its holding was "limited": "We hold only that where a newspaper publishes truthful information *which it has lawfully obtained*, punishment may be lawfully imposed, if at all, only when narrowly tailored to a state interest of the highest order, and that no such interest is satisfactorily served by imposing liability under § 794.03 to appellate under the facts of this case."[3] *Id.* at 541 (emphasis added).

Here, the circumstances of the publication of the Chart are much different than the cases cited by ESPN. The Chart was not in the public domain. Schefter's purpose in publicizing the Chart was not to: (a) report on, or scrutinize, any government operations, whether a criminal prosecution or otherwise, as was the case in *Hitchner*; or (b) report on criminal activity, as was the case in *Florida Star*. To the contrary, Schefter was "attempting to sensationalize a private nongovernmental matter" – so he electronically blasted Plaintiff's medical records to his 4 million Twitter followers (and made it available to anyone worldwide with Internet access) to provide an exclamation point on, and "supporting proof" of, his report of the surgical procedure. Schefter had the story of the amputation. If, as ESPN claims, Schefter is one of the most respected sports journalists, then there was no reason for "supporting proof" of his report because it would not have been questioned. By his own admission, the sole purpose of including the Chart in the Twitter Message was for commercial gain, to enhance his reputation. (ESPN's Br., Exh. 2).

**D.      ESPN Does Not Explain How the Chart Was Newsworthy**

Although ESPN contends that "a serious injury suffered by a professional football player … is of legitimate public concern," (ESPN's Br. at 14 n. 8), ESPN does not explain how *Plaintiff's medical records* were of legitimate public concern, as opposed to simply reporting that the injury occurred. Nowhere in its motion does ESPN explain why the public cares about Plaintiff's actual medical records reflecting an amputation (and other private medical information), as opposed to merely news that the amputation occurred. In fact, the State of

---

[3] Apparently, ESPN misses the point. ESPN claims that "the notion that the law would protect Jason Pierre-Paul's fractional medical record merely because it is a physical piece of paper, but would not protect the identity of a rape victim, is not one that even merits serious discussion." (ESPN's Br. at 14). The reason why the Supreme Court held that the newspaper was not liable for publishing the victim's name was because it was *lawfully obtained*, a fact indisputably missing from this case.

Florida recognizes that "certainly if there is any right of privacy at all, it should include the right to obtain medical treatment at home or in a hospital for an individual personal condition (at least if it is not contagious or dangerous to others) without personal publicity." *Doe v. Univision Tele. Group, Inc.*, 717 So.2d 63, 64 (Fla. 3rd DCA 1998)(quoting the Supreme Court of Missouri); *see also Harris v. Miami Daily News, Inc.*, 127 So.2d 715 (Fla. 3rd DCA 1961)(noting that the phrase "public or general interest" in the right to privacy context "does not mean mere curiosity").

ESPN tries to erect a straw man by claiming that "Plaintiff concedes … that the subject-matter of Mr. Schefter's tweet is a matter of public concern" and that "Plaintiff admits that his injuries, including the specifics of the medical treatment he received for them, are a matter of public concern." (ESPN's Br. at 14, 17).  In truth, the Complaint alleges just the opposite: "The Chart, as distinguished from the amputation of Plaintiff's right index finger, was not a matter of legitimate public concern." (Compl. ¶ 36).  Indeed, the entire purpose of HIPAA and Florida Statute § 456.057 is to *prevent* the disclosure of private and confidential medical records, and inherent in those statutes is the notion that one's medical records are not of legitimate public concern.  Yet ESPN reveals that it does not care about the medical privacy statutes when it writes that the Chart is "nothing more than photographs of words on a piece of paper and a computer screen stating that Plaintiff's finger had been amputated." (ESPN's Br. at 18).  In other words, according to ESPN, Plaintiff's private and confidential medical records, or anyone else's for that matter, amount to "nothing" even though they are protected by state and federal laws.   ESPN is not be the arbiter of whether it is appropriate to publicly disseminate records that are statutorily protected.  Its cavalier attitude towards medical records is unconscionable.

ESPN's reliance upon *Cape Publ., Inc. v. Bridges*, 423 So.2d 426 (Fla. 5th DCA 1982), is also misplaced. (ESPN's Br. at 18).  In that case, a woman was abducted and, after the police stormed her location, she ran outside "in full public view" clutching a dish towel to conceal her nudity. *Id.* at 427.  In this case, Plaintiff's Chart was not in the public's view.  As for ESPN's citation to *Shulman v. Group W Prods.*, 18 Cal. 4th 200 (1998), in that case a cameraman filmed the extraction of the plaintiffs from their overturned car, a flight nurse's daring efforts to rescue them and provide medical care, and their transport from a helicopter to a hospital.  A condensed version of the footage was later aired on a television program highlighting the challenges facing emergency rescue workers. *Id.* at 210.  Whereas the broadcast video contained dramatic footage

of a rescue situation involving an overturned car and helicopter, there is nothing spectacular about Plaintiff's Chart.

The cases cited by ESPN do not stand for the proposition that an athlete's medical records are a matter of legitimate public concern.  In *Thomas v. Catlin*, 141 Fed. Appx. 673 (9th Cir. 2005), an Olympic athlete failed to sufficiently allege facts showing that a scientific article identified her as the source of the positive urine samples.  In *Chapman v. Journal Concepts, Inc.*, 528 F.Supp.2d 1081 (D. Haw. 2007), the plaintiff-surfer's drug use and drinking were not private because they were previously disclosed in other publications, and thus part of the public or historical record.  In *Holt v. Cox Enterp.*, 590 F.Supp. 408 (N.D. Ga. 1984), a newspaper wrote a series of articles about the plaintiff-football player's role in a controversial hit in a public college football game.  The federal court rejected an invasion of privacy by disclosure of private facts claim because "the facts disclosed concern not a private matter but information related solely to the public part of a limited purpose public figure's life." *Id.* at 414.[4]  Here, of course, the Twitter Message specifically refers to Plaintiff: (1) it states that "ESPN obtained medical charts that show Giants DE Jason Pierre-Paul had right index finger amputated today" and (b) it includes the Chart which references "PIERREPAUL, JASON". (ESPN's Br., Exh. 1).  Moreover, the Chart herein was not part of the public or historical record.

Furthermore, ESPN pretends as if the Chart solely contained the exact same words as the text of Schefter's Twitter Message and glosses over the fact that the Chart reflects more than an amputation.  For instance, ESPN claims that the Chart "contained essentially the same words," that the Chart had "similar words," and that the Chart was "an actual picture of the same information embodied in a document." (ESPN's Br. at 1, 18).  The Chart does not merely reflect

---

[4] In a footnote, ESPN cites various cases and claims that a serious injury suffered by a professional football player is a matter of legitimate public concern.  However, none of those cases hold that a professional football player's medical records are a matter of legitimate public concern.  In fact, none of the cases relate to medical records. *See Dryer v. National Football League*, 2016 WL 761178 (8th Cir. Feb. 26, 2016)(former NFL players alleged that NFL's use of footage of games in which they played violated their rights of *publicity*); *Marshall v. ESPN*, 111 F.Supp.3d 815 (M.D. Tenn. 2015)(former and current student athletes alleged their rights of *publicity* were violated); *Moore v. Univ. of Notre Dame*, 968 F.Supp. 1330, 1336 n. 11 (N.D. Ind. 1997)(former offensive line coach sued Notre Dame for age discrimination and defamation); *Bell v. Associated Press*, 584 F.Supp. 128 (D.D.C. 1984)(NFL player sued Associated Press for libel when it reported he was arrested for lewdness when, in reality, the person charged was an imposter).

that Plaintiff's finger was amputated.  It also reveals that Plaintiff had a skin graft, identifies the type of amputation (ray resection), and discloses that steel pins ("K-WIRES") were inserted in Plaintiff's hand. (ESPN's Br., Exh. 1).  Indeed, Schefter was so cavalier in his handling of the medical records that he included, in his Twitter Message, information pertaining to an "elbow retraction" *for someone other than Plaintiff*. (Id.).

In any event, it was not for Schefter or ESPN to decide whether the information in the Chart was pedestrian enough for them to disclose it.  The medical privacy statutes provide that *any* medical record is worthy of protection from disclosure.  ESPN and its staff are not above the law despite their assertions to the contrary.

**E.**      **Schefter Admitted that the Chart Was Not Newsworthy**

After Schefter's wrongful publication of the Chart, he made several incriminating admissions to *Sports Illustrated*, including that he distributed the Chart not because it was newsworthy but because it was "supporting proof" of his report that Plaintiff's finger was amputated. (ESPN's Br., Exh. 2).  Such admission refutes ESPN's current defense that the Chart itself was newsworthy.  All of Schefter's admissions are worth noting.

To begin with, Schefter acknowledged that, after Plaintiff's fireworks accident, "there was a cone of secrecy that surrounded him for five days that not even his own team could crack." (ESPN's Br., Exh. 2, p. 7).  In other words, even though Schefter knew that Plaintiff wanted to maintain the privacy of his medical condition and records, Schefter disrespected that desire, and violated the law, by publishing the Chart.

Schefter then admitted that the only reason why he publicized the Chart was out of fear that his report of Plaintiff's surgery would be questioned: "But in a day and age in which pictures and videos tell stories and confirm facts, in which sources and their motives are routinely questioned, and in which reporters strive to be as accurate as possible, *this was the ultimate supporting proof*." (ESPN's Br., Exh. 2, p. 7)(emphasis added).  Schefter later reiterated that the Chart was simply proof, not news: "…we delivered that news [the amputation] as soon as possible with the supporting proof if it happened." (ESPN's Br., Exh. 2, p. 8).  Thus, the reason why Schefter did not simply report that Plaintiff had his finger amputated (without including the Chart in the Twitter Message) was because Schefter wanted to show the world that he had "proof" of the amputation – the Chart reflecting the amputation.  Nowhere in Schefter's lengthy

answers to *Sports Illustrated's* questions does he claim that Plaintiff's medical records are newsworthy or of any interest.

In attempting to justify the use of the Chart as "visual evidence," ESPN relies upon other cases involving a criminal prosecution, such as *Anderson v. Sulters*, 499 F.3d 1228 (10th Cir. 2007). In that case, the plaintiff provided the police with a videotape of her being raped by her estranged husband, who had already been arrested for sexually assaulting other alleged victims. *Id.* at 1231. The police then gave the videotape to a local television station, which aired excerpts. *Id.* The Tenth Circuit held that the videotape was substantially relevant to a matter of legitimate public concern: the prosecution of a local attorney (her estranged husband) for rape and sexual assault. *Id.* at 1236. The Tenth Circuit stressed that the news broadcast's focus was the husband's criminal activities, not the plaintiff, who was not identified by name or physically identifiable in the video. *Id.* at 1237. Significantly, the Tenth Circuit wrote: "Had the broadcast gone further invading [plaintiff's] privacy, rather than focusing on her estranged husband's wrongdoing, we would have had a very different case. But the simple fact is that this was a broadcast about a rapist, not a rape victim, and the legitimate privacy interests of the two could not be more different." *Id.* Here, no criminal prosecution is present and the Twitter Message focused on Plaintiff. [5]

Schefter also conceded that, in his hurry to "break news," he neglected to consult with others at ESPN about whether it was appropriate to distribute Plaintiff's private and confidential medical records to the world: "… but in hindsight I could have and should have done even more here due to the sensitivity of the situation. … Sometimes in the fast-paced news world we live in, it's easy to forget you should lean on the knowledge and experience of the people surrounding you." (ESPN's Br., Exh. 2, p. 7). Indeed, Schefter was in such a rush to tell the world about Plaintiff's medical condition that he failed to thoroughly review the Chart before he published it: "All I saw in that record was the name, the age, the gender, and the patient's finger amputated. It didn't look to me as if there was anything else in there that could be considered sensitive."

---

[5] The other cases cited by ESPN are distinguishable for the same reason. *See Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)(video of sexual activities of clergy was of legitimate public concern because it related to party's guilt or innocence of criminal conduct, implicated the performance of the District Attorney, and concerned the activities of an ordained priest and the church's responses thereto); *Logan v. District of Columbia*, 447 F.Supp. 1328 (D.D.C. 1978)(no illicit means were used to obtain data for article about undercover police operation).

(ESPN's Br., Exh. 2, p. 8). However, as noted above, the Chart includes more than that, such as a skin graft, the type of amputation (ray resection), and the insertion of steel pins ("K-WIRES") in Plaintiff's hand. (ESPN's Br., Exh. 1). And, it was not for Schefter to decide whether the Chart contained sensitive information because *the law deems all medical records sensitive*. It was not his decision to make.

Lastly, Schefter then acknowledged that he went beyond the standard reporting of NFL injuries: "NFL reporters report on all kinds of medical information on a daily basis. That's part of the job. The only difference here was that there was a photo." (ESPN's Br., Exh. 2, p. 8). That "difference" is a big one because the "photo" is of a private medical record protected from disclosure by law.

## II.       THE COMPLAINT STATES A CLAIM FOR VIOLATION OF FLA. STAT. § 456.057

Florida Statute § 456.057 creates a broad doctor-patient privilege of confidentiality. (Fla. Stat. § 456.057). ESPN does not dispute that the Hospital is a "records owner" as that term is defined by Florida Statute § 456.057(1). Similarly, ESPN does not dispute that the Chart, and the other reports and records of the Hospital's examination and treatment of Plaintiff, are protected from disclosure. The statute provides that "such records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient, the patient's legal representative, or other health care practitioners and providers involved in the patient's care or treatment, except upon written authorization from the patient." (Id. § 456.057(7)(a)). ESPN does not contend that the Hospital's disclosure of Plaintiff's medical records without his written authorization, except in certain delineated circumstances, constitutes a violation of the statute.

The statute provides:

> Records owners are responsible for maintaining a record of all disclosures of information contained in the medical record to a third party, including the purpose of the disclosure request. The record of disclosure may be maintained in the medical record. *The __third party__ to whom information is disclosed __is prohibited__ from further disclosing any information in the medical record without the expressed written consent of the patient or the patient's legal representative.*

(Id. § 456.057(11))(emphasis added). Because the Hospital disclosed the Chart to Schefter, he was prohibited from further disclosing it or any information therein without the expressed

written consent of Plaintiff or Plaintiff's legal representative, which consent was never sought or obtained. (Compl. ¶ 29).  His disclosure of the Chart constitutes a violation of the statute. (Id. ¶ 30).

## A.      The Statute is Not Limited to Health Care Providers

ESPN argues that the statute "does not apply to the general public, including (but not limited to) members of the media." (ESPN's Br. at 7).  However, ESPN does not cite to a single case supporting its position.  Instead, ESPN provides its own interpretation of the statute. According to ESPN, because the statute authorizes the disclosure of medical records, without written authorization, to certain people in enumerated circumstances, (Fla. Stat. § 456.057(7)(a)), the words "third party" in section 456.057(11) can only refer to those people. (ESPN's Br. at 6 – 8).

Again, section 456.057(11) states: "Records owners are responsible for maintaining a record of all disclosures of information contained in the medical record to *a third party*, including the purpose of the disclosure request." (Fla. Stat. § 456.057(11))(emphasis added).  It is not limited in any fashion, let alone in the manner that ESPN suggests.  Where, as here, a statute is free from ambiguity, its plain meaning must be followed. *State v. Dugan*, 685 So.2d 1210, 1212 (Fla. 1996)("When interpreting a statute, courts must determine legislative intent from the plain meaning of the statute."); *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So.2d 1071, 1073 (Fla. 1982)("The plain meaning of the statutory language is the first consideration.").

If, as ESPN claims, the Florida Legislature intended for section 456.057(11) to be limited to the people identified in section 456.057(7), then the Legislature would have drafted the statute to read: "Records owners are responsible for maintaining a record of all disclosures of information made pursuant to section 456.057(7), including the purpose of the disclosure request," or something to that effect.

At least one Florida federal court has noted that the statute is applicable to non-physicians.  In *Daw v. Cowan*, 2013 WL 5838683 (N.D. Fla. Oct. 30, 2013), the plaintiff alleged that two family service counselors (Finch and Williams) with private foster care service provider Families First Network violated Florida Statute § 456.057 by contacting her physician and convincing him to stop prescribing her medications.  The federal court stated:

Although the primary purpose of the statute is to impose restrictions on *physicians* and other health care practitioners regarding the release of medical information, in this case Daw claims it is Defendants Finch and Williams who

> have violated her privacy rights. Given the statute's primary purpose, it is not surprising that many of the cases interpreting these provisions address physicians' obligations and responsibilities with regard to safeguarding and disclosing medical records. The Florida courts have, however, also interpreted these provisions with respect to the actions of non-physicians (and state actors) and found that they, too, may violate an individual's right to privacy in some circumstances.

*Id.* at *9. The claim for violation of the statute was dismissed because the plaintiff failed to allege that the counselors received anything from the physician. *Id. at* *10.[6]

With respect to ESPN's belief that the scope of the statute is "absurd," (ESPN's Br. at 8), ESPN can address that concern with the Legislature. It is not the role of the judiciary, especially a federal court, to rewrite a state statute. In any event, ESPN's example of an absurd result is not absurd at all. ESPN argues that if a journalist learns that Florida's governor was concealing a grave illness that prevented him from performing his duties and that put the state's welfare at risk, the journalist would be strictly liable under the statute (under its plain meaning) for reporting that information. (Id.). To begin with, ESPN's hypothetical does not include the manner by which the journalist obtained that information, which as noted above is relevant. Putting that aside, no one would dispute the newsworthiness of a governor's inability to perform his or her executive functions. To the contrary, ESPN cannot explain how Plaintiff's Chart is of legitimate public concern. Thus, the analogy is inappropriate.

Next, ESPN contends that Plaintiff's position is nonsensical because it would inhibit "the ability of sports reporters to report the details of an NFL's player's injuries whenever the reporter's source is allegedly someone connected to a hospital." (ESPN's Br. at 9). Apparently, ESPN believes that Schefter and other sports reporters are not bound by the law. If a sports reporter obtains an NFL player's medical records from a hospital and then discloses it, as was the case here, then that reporter has violated the statute. Nothing exempts sports reporters from the law's protection of medical records.

---

[6] While ESPN cites to *Hargrave v. GE Aviation Sys., LLC*, 2009 WL 2340654 (M.D. Fla. July 29, 2009), for the proposition that the statute only governs health care professionals, (ESPN's Br. at 9), the plaintiff in that case did not allege that the disclosure at issue violated any part of the statute, let alone section 456.057(11). And, the federal court only addressed section 456.057(7).

**B.**     <u>**There is No Basis to Bar Plaintiff's Private Right of Action**</u>

ESPN further argues that there is no private right of action under the statute. (ESPN's Br. at 11).  However, once again, ESPN does not cite to any case holding that one cannot assert a claim for violation of section 456.057.  On the other hand, the federal court's decision in *Daw* at least implies that a private right of action is available.  As noted above, the plaintiff therein alleged that two family service counselors violated the statute by contacting her physician, Dr. Smith. 2013 WL 5838683, at *3.  The federal court noted that "to the extent Plaintiff's allegations suggest that Dr. Smith violated her privacy rights, no claim lies because he is not named as a Defendant." *Id.* at *8, n.12.  If, as ESPN claims, there is no private right of action, then the federal court in *Daw* would have noted that no claim lies against Dr. Smith for that reason (as well as because he was not named as a defendant).

Contrary to ESPN's argument, the statute does not limit enforcement to professional discipline against licensees and litigation brought by the Attorney General. (ESPN's Br. at 12). Section 456.057(15) states: "Licensees in violation of the provisions of this section shall be disciplined by the appropriate licensing authority." (Fla. Stat. § 456.057(15)).  Section 456.057(16) provides: "The Attorney General is authorized to enforce the provisions of this section *for records owners* not otherwise licensed by the state…." (Id. § 456.057(16))(emphasis added).  In other words, according to ESPN, if the party obtaining the medical records is not licensed by the Florida Board of Health and is not a "records owner" as defined by the statute, there are no ramifications for that party's violation of the statute, even if that party is specifically enumerated in section 456.057(7) as one to whom records can be disclosed without authorization.  That makes no sense.

**C.**     <u>**The Statute Does Not Violate the First Amendment**</u>

Lastly, ESPN contends that the statute violates the First Amendment "by prohibiting the publication of truthful information relating to a matter of public concern." (ESPN's Br. at 12). As noted above, ESPN cannot explain how the Chart, a medical record, is a matter of public concern.  Moreover, ESPN's reliance upon the First Amendment and *Florida Star* to defend its blatant violation of Plaintiff's rights was addressed above, and need not be repeated here.  It is noted that in *Acosta v. Richter*, 671 So.2d 149 (Fla. 1996), the Supreme Court of Florida found "no First Amendment flaw" because the statute strikes a balance between a patient's individual privacy rights and society's need for limited disclosure of medical information.

### III.   FLA. STAT. § 768.295 IS INAPPLICABLE

Seeking to divert the Court's attention away from its wrongdoing, ESPN claims that it is entitled to attorneys' fees and costs under Florida's anti-SLAPP (strategic lawsuit against public participation) statute, Fla. Stat. § 768.295. (ESPN's Br. at 19 – 20).  The statute is inapplicable for several reasons.

The statute provides, in relevant part, that a person "may not file … any lawsuit … against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue…." (Fla. Stat. § 768.295(3)).  "Free speech in connection with public issues" means "any written or oral statement that is protected under applicable law and … is made in connection with a … news report …." (Id. 768.295(2)(b)).  Thus, to prove the anti-SLAPP defense, ESPN must show that: (1) this lawsuit was filed without merit; and (2) the primary reason of the lawsuit was because (a) ESPN made a written statement that was lawful (b) in a news report.

As detailed above, the lawsuit is far from meritless.  To the contrary, Plaintiff will likely succeed on the merits.  Moreover, Plaintiff's primary reason for filing the lawsuit was not because the defendants made a lawful written statement in a news report.  Rather, the primary reason was because the defendants illegally obtained the Chart from the Hospital, which violated specific statutes protecting Plaintiff's medical records from disclosure, and then distributed the Chart worldwide, even though it is not newsworthy, all so Schefter could show the world that he had "supporting proof" of a surgery, the occurrence of which could not be denied.

With respect to lack of merit in general, it is noted that ESPN's counsel, Levine Sullivan Koch & Schulz LLP, also represents the website Gawker in *Bollea v. Clem et al.* (Pinellas County Case No. 12012447 CI-011).  In that case, Gawker posted a video of the plaintiff, who is professionally known as Hulk Hogan, engaged in sexual activity in a bedroom.  Gawker knew that the plaintiff had been secretly filmed and that he objected to the publication of the video's release, but Gawker posted it anyway, and then tried to defend the ensuing invasion of privacy lawsuit on the grounds that the video was newsworthy.  Its motion to dismiss was denied and, years later, a jury awarded the plaintiff $140 million.  Despite those results, the Levine Sullivan firm now proffers the same arguments to this Court.

## <u>CONCLUSION</u>

For the reasons set forth herein, ESPN's motion to dismiss should be denied in its entirety.

**MEISTER SEELIG & FEIN LLP**
Mitchell Schuster, Esq.
ms@msf-law.com
Kevin Fritz, Esq.
kaf@msf-law.com
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3570
Facsimile: (212) 655-3535
*Attorneys for Plaintiff*


**HINSHAW & CULBERTSON LLP**

By:      *s/John C. Lukacs, Sr.*
John C. Lukacs, Sr., Esquire
jlukacs@hinshawlaw.com
FNB: 362727
2525 Ponce de Leon Boulevard
4th Floor
Coral Gables, Florida 33134
Telephone: (305) 358-7747
Facsimile: (305) 577-1063
*Attorneys for Plaintiff*

Case No. 16-CV-21156-COOKE-TORRES

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 5, 2016, the foregoing was served via CM/ECF which

will serve a copy upon the following:

Deanna K. Shullman, Esq.
Allison S. Lovelady
Thomas & LoCicero, PL
401 SE 12th Street, Suite 300
Fort Lauderdale, FL 33316
Attorneys for ESPN


And a copy will be served via email and U.S. Mail upon the following:

Nathan Siegel, Esq.
*(pro hac vice forthcoming)*
Adam Lazier, Esq.
*(pro hac vice forthcoming)*
Levine Sullivan Koch & Schulz LLP
1899 L Street, NW
Suite 200
Washington, DC 20036


/s/John C. Lukacs, Sr.
John C. Lukacs, Sr., Esquire

15224434v1 0986297